**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| MYSCRIPT SAS, | |
| Plaintiff, | CIVIL ACTION NO. ____ |
| v. | |
| GOODNOTES LIMITED, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement in which Plaintiff MyScript SAS ("MyScript") makes the following allegations against Defendant Goodnotes Limited ("Goodnotes") for infringing the Patents asserted in this matter:

**THE PARTIES**

1.      MyScript is a French entity, having a principal place of business located at 3 rue de la Rainière 44339 Nantes Cedex 3 France.

2.      Upon information and belief, Goodnotes is a privately held company headquartered in the United Kingdom, having a principal place of business located at 1 Bartholomew Lane, London, United Kingdom, EC2N 2AX, and with an additional office in Hong Kong. Goodnotes engages in business, either directly or through its agents, on an ongoing basis in this judicial district and elsewhere in the United States. Although Goodnotes is engaged in business in Texas, it has not designated an agent for service of process in Texas. The Texas Secretary of State, therefore, is an agent for service of process for Goodnotes under the Texas Civil Practice and Remedies Code § 17.044(b). On information and belief, Goodnotes is responsible for selling the Accused Products in Texas and in the Eastern District of Texas, directly or through intermediaries.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

4.      This Court has personal jurisdiction over Goodnotes because Goodnotes has (1) committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District; (2) regularly done or solicited business in this District; (3) engaged in other persistent courses of conduct and derived substantial revenue by its offering of infringing products and services and providing infringing products and services in this District; and (4) purposefully established substantial, systematic, and continuous contacts with this District and should have reasonably expected to be subject to suit here by its offering of infringing products and services and providing infringing products and services in this District.

5.      Goodnotes specifically targeted Texas and this judicial district on its Goodnotes USA Tour 2024 to promote, advertise, use, sell, and offer for sale of its infringing products. Between November 2024 and January 2025, Goodnotes held promotional events at the following Texas universities, including the Texas Woman's University, located in the Eastern District of Texas:

        a.      University of Houston on November 17, 2024 (**Exhibit A**).

        b.      Texas A&M University on November 20, 2024 (**Exhibit B**).

        c.      University of Texas, Austin on November 21, 2024 (**Exhibit C**).

        d.      Texas State University on November 22, 2024 (**Exhibit D**).

        e.      University of Texas, Arlington on January 13, 2025 (**Exhibit E**).

        f.      Texas Christian University on January 14, 2025 (**Exhibit F**).

        g.      Texas Woman's University on January 15, 2025 (**Exhibit G**).

6.      Goodnotes has sold infringing products in Texas.

a.     As part of the Goodnotes USA Tour 2024, Goodnotes stated that "[f]or every ten downloads of Goodnotes at participating universities, we will donate to plant a tree through One Tree Planted. To add a bit of friendly competition, we'll have a leaderboard tracking which colleges plant the most trees." Available at (https://www.goodnotes.com/blog/goodnotes-usa-tour#help-us-plant-trees-along-the-way) (last visited 05/08/2025).

b.     On March 5, 2025, Goodnotes' Instagram account (https://www.instagram.com/goodnotes.app/p/DG0zjllug-N/ (last visited 05/08/2025)) posted the leaderboard, indicating that the University of Texas, Arlington was among the top 10 universities with the most downloads of Goodnotes products:



7.     Goodnotes has and continues to purposefully place and sell infringing products in Texas and within this judicial district. For example, Goodnotes distributes Goodnotes 6 in this judicial district through Goodnotes website, Apple's App Store, and distributes similar products

in this judicial district through Google's Google Play Store, and Microsoft's Store for Windows devices (collectively the "Accused Products"):

    a.    Goodnotes' website (goodnotes.com/web) for "Web" use:



    b.    Goodnotes provides links on its website (goodnotes.com) under Download to connect users to third-party websites to download the Accused Products, including links for Goodnotes 6 available on iOS and MAC, and similar products available on Windows, Android, and Web:



c.       Apple App Store (iOS) (https://apps.apple.com/us/app/goodnotes-6/id1444383602) for Goodnotes 6 for use on iPhone, iPad, and Mac devices:



d.       Google's Google Play Store

(https://play.google.com/store/apps/details?id=com.goodnotes.android.app&utm_source=

web&pcampaignid=pcampaignidMKT-Other-global-all-co-prtnr-py-PartBadge-Mar2515-1) for Goodnotes for Android for use on Android devices:



e.  Microsoft Store (https://apps.microsoft.com/detail/9n92mc09db30?hl=en-us&gl=US) for Goodnotes for Windows for use on Windows devices:



8.      Goodnotes, directly and through subsidiaries or intermediaries, has purposefully and voluntarily placed the Accused Products into this district and into the stream of commerce with the intention and expectation that the Accused Products will be purchased for use in this district. Goodnotes has imported, offered for sale and sold, and continue to offer for sale and sell, Accused Products for use in this district.

9.      Venue is proper in the district under 28 U.S.C. §§ 1391(b), (c), and/or 1400(b). Venue in this district is proper for Goodnotes at least because it is a foreign entity that has committed acts of infringement in this district as detailed throughout this complaint.

## BACKGROUND

10.      Handwriting recognition technology has advanced significantly in recent years, since its beginnings in the 1990s, providing a more instinctive input method for digital devices. This technology enables users to write on touch-sensitive screens using digital pens or stylus devices, thereby simulating pen-on-paper experience. The innovation of handwriting recognition lies in its ability to convert handwritten input into digital text and shapes, enhancing user interaction with devices through digital ink management. The inclusion of editing capabilities further enriches this technology, allowing for seamless and efficient management of handwritten content

11.      Despite its slow initial uptake, the value of handwriting recognition technology has become evident through its recent widespread adoption. Initially, factors such as accuracy, user preferences, and the complexity of the technology contributed to its slower acceptance. However, advancements in machine learning and sensor-based recognition have significantly improved the efficiency and accuracy of handwriting recognition technologies. This has led to a surge in adoption across various industries, with multiple companies integrating handwriting recognition into their products to enhance user experience and productivity.

12.     MyScript's innovations are at the forefront of this adoption. The first industrial hybrid system combining artificial neural networks and Markov models was developed by MyScript in the early 2000s. Through consistent research efforts, year after year, MyScript has played a significant role in scientific advancements that have resulted in the development of innovative technology and products by MyScript and others. These innovations have demonstrated that this technology has real-world applications and a viable market. MyScript's innovations have also enabled MyScript to maintain a competitive edge over others in the industry. The widespread licensing of MyScript's technology underscores the industry's recognition of the significant usefulness and value of these innovative features. As more applications and devices incorporate handwriting recognition, its value becomes increasingly apparent.

13.     Founded in 1998, MyScript (formally known as "Vision Objects") is a leading company in the field of handwriting recognition technology and renowned for its innovative solutions and extensive patent portfolio. MyScript's handwriting recognition technology enables the conversion of handwritten notes into digital content, enhancing user interaction with digital devices through digital ink management. This technology is particularly valuable for applications requiring instinctive input methods, such as note-taking, diagram creation, and document editing.

14.     MyScript's innovative technology solutions are widely recognized as a fundamental aspect of handwriting recognition. MyScript's technology is used by independent software vendors ("ISV") and original equipment manufacturers ("OEM(s)") in a variety of applications and products, serving industries such as consumer electronics, enterprise solutions, automotive and education all over the globe. Notable products include the MyScript Text software development kit ("Text SDK"), MyScript Interactive Ink ("iink") SDK (collectively, "MyScript

SDKs"). MyScript has also developed many business-to-consumer offerings, including two active applications that directly integrate MyScript SDKs, Nebo and MyScript Calculator.

15.     MyScript has numerous granted and pending patent applications in different jurisdictions that cover its various technologies. MyScript also employs nearly twenty Ph.D. holders and invests over 40% of its turnover in internal research projects, highlighting its commitment to research and its investment in developing technologies that provide it with a competitive advantage.

16.     Goodnotes (formally known as "Time Base Technology Limited") offers digital note-taking applications on various devices, including those running on iOS, Android, and Windows operating systems as set forth above in paragraph 7. One such application is Goodnotes 6 on iOS, which is the latest version of Goodnotes' digital note-taking application. Upon information and belief, Goodnotes launched Goodnotes 6 in August 2023, and it currently has over 25 million monthly active users.

17.     Goodnotes 6 includes several features not included in prior versions of Goodnotes' product and which infringe the patents asserted in this action. These features include, but are not limited to, intuitive pen gestures such as scribbling to erase mistakes and circling to select items, a reflow feature that allows users to seamlessly change the size and layout of their handwritten notes while maintaining the visual integrity of the handwritten text, and additional editing features that enhance the app's flexibility and usability.

18.     MyScript and Goodnotes had a contractual relationship between 2014 and 2023 during which time MyScript licensed MyScript Text SDK on iOS, Mac, Android and Windows operating systems to Goodnotes for the purposes of development and distribution of the Goodnotes notetaking application. The relationship was governed by a signed licensed agreement and related

amendments ("Agreement"). Throughout this relationship, Goodnotes was aware that MyScript's Text SDK technology is proprietary and that Goodnotes was prohibited under the Agreement from reverse engineering the technology.

19.    During the relationship, and upon Goodnotes' request, MyScript provided Goodnotes access to the MyScript iink SDK through MyScript's Partners Portal from May 11, 2021 to August 10, 2021 so Goodnotes could evaluate the suitability and internally test the MyScript iink SDK. Before accessing the MyScript iink SDK through MyScript's Partners Portal, Goodnotes accepted the terms of the MyScript Evaluation Agreement which stated that MyScript retained exclusive ownership of all rights of the MyScript iink SDK and further outlined restrictions on Goodnotes' use of the technology.

20.    In September 2022, a Goodnotes employee created an account on the MyScript Developer Portal to test the MyScript iink SDK on device and cloud recognition services. During account creation, the Goodnotes employee accepted the terms and conditions of the MyScript Developer Portal before accessing the technology, which stated that MyScript retained exclusive ownership of all rights of the MyScript iink SDK and further outlined restrictions on the use of the technology.

21.    The Agreement's term was fixed until August 5, 2024 and due to renew automatically for periods of one year unless either party gave prior notice. On December 19 2022, the CEO of Goodnotes at that time sent an email to MyScript providing notice that Goodnotes would no longer be integrating MyScript Text SDK in its Goodnotes 5 application because Goodnotes had developed its own handwriting recognition solution. After resolving issues relating to Goodnotes' undeclared and unpaid licenses, the parties mutually terminated the Agreement on May 19, 2023.

22.    Upon information and belief, Goodnotes was developing the Goodnotes 6 application during the term of the Agreement.[1]

## **PATENTS-IN-SUIT**

23.    This complaint asserts causes of action for infringement of U.S. Patent No. 9,965,175 (the "'175 Patent), U.S. Patent No. 10,082,951 (the "'951 patent"), U.S. Patent No. 11,402,991 (the "'991 patent"), U.S. Patent No. 10,410,316 (the "'316 patent"), U.S. Patent No. 10,181,076 (the "'076 patent"), U.S. Patent No. 10,013,603 (the "'603 patent"), and U.S. Patent No. 9,489,572 (the "'572 patent") (collecting "the Asserted Patents").

24.    Each of the Asserted Patents claims patent-eligible subject matter and is a valid and enforceable U.S. patent, the entire right, title, and interest to which MyScript owns by assignment.

## **U.S. Patent No. 9,965,175**

25.    On May 8, 2018, after a full and fair examination, the U.S. Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 9,965,175 (the "'175 patent), entitled SYSTEM AND METHOD OF DIGITAL NOTE TAKING. MyScript is the owner, by assignment, of all rights, title and interest to the '175 patent. Since its issuance, the '175 patent has been in full force and effect. A true and correct copy of the '175 patent is attached as **Exhibit H** hereto.

26.    The '175 patent is generally directed to reflowing handwritten text due to resizing of a text block such that the reflow process maintains the visual integrity of the handwritten text, making it easier for users to read and interact with the content on touch-sensitive devices.

27.    Goodnotes is not licensed to practice the '175 patent in either an express or implied manner, nor does it enjoy or benefit from any rights in or to the '175 patent whatsoever.

---

[1] https://www.goodnotes.com/blog/machine-learning-engineer-handwriting-recognition. (June 1, 2023) (last visited April 28, 2025).

**U.S. Patent No. 10,082,951**

28.    On September 25, 2018, after a full and fair examination, the USPTO duly and

legally issued U.S. Patent No. 10,082,951 (the "'951 patent"), entitled SYSTEM AND METHOD

FOR DIGITAL INK INTERACTIVITY. MyScript is the owner, by assignment, of all rights, title

and interest to the '951 patent. A true and correct copy of the '951 patent is attached as **Exhibit I**

hereto.

29.    The '951 patent is generally directed to mapping digital ink strokes to recognized

elements to enhance user experiences by providing dynamic and interactive ways to create and

manage hand-drawn text and diagrams on computing devices.

30.    Goodnotes is not licensed to practice the '951 patent in either an express or implied

manner, nor does it enjoy or benefit from any rights in or to the '951 patent whatsoever.

**U.S. Patent No. 11,402,991**

31.    On August 2, 2022, after a full and fair examination, the USPTO duly and legally

U.S. Patent No. 11,402,991 (the "'991 patent"), entitled SYSTEM AND METHOD FOR NOTE

TAKING WITH GESTURES. MyScript is the owner, by assignment, of all rights, title and interest

to the '991 patent. A true and correct copy of the '991 patent is attached as **Exhibit J** hereto.

32.    The '991 patent is generally directed to a system for editing digital documents on

computing devices, including methods for processing and displaying digital ink and allowing users

to edit handwritten input using gestures on the device's input surface.

33.    Goodnotes is not licensed to practice the '991 patent in either an express or implied

manner, nor does it enjoy or benefit from any rights in or to the '991 patent whatsoever.

**U.S. Patent No. 10,410,316**

34.    On September 10, 2019, after a full and fair examination, the USPTO duly and legally U.S. Patent No. 10,410,316 (the "'316 patent"), entitled SYSTEM AND METHOD FOR BEAUTIFYING DIGITAL INK. MyScript is the owner, by assignment, of all rights, title and interest to the '316 patent. A true and correct copy of the '316 patent is attached as **Exhibit K** hereto.

35.    The '316 patent is generally directed to a system for editing digital documents on computing devices that allows users to refine and enhance the appearance of their handwritten input by selecting and modifying text directly with the cursor, making it visually appealing and easier to read and edit.

36.    Goodnotes is not licensed to practice the '316 patent in either an express or implied manner, nor does it enjoy or benefit from any rights in or to the '316 patent whatsoever.

**U.S. Patent No. 10,181,076**

37.    On January 15, 2019, after a full and fair examination, the USPTO duly and legally of U.S. Patent No. 10,181,076 (the "'076 patent"), entitled SYSTEM AND METHOD FOR RECOGNIZING GEOMETRIC SHAPES. MyScript is the owner, by assignment, of all rights, title and interest to the '076 patent. A true and correct copy of the '076 patent is attached as **Exhibit L** hereto.

38.    The '076 patent describes a system that can recognize a user's natural drawing of geometric shapes by processing both single-stroke and multi-stroke shapes, applying implicit and user-defined constraints at the vector component level.

39.    Goodnotes is not licensed to practice the '076 patent in either an express or implied manner, nor does it enjoy or benefit from any rights in or to the '076 patent whatsoever.

**U.S. Patent No. 10,013,603**

40.     On July 3, 2018, after a full and fair examination, the USPTO duly and legally U.S. Patent No. 10,013,603 (the "'603 patent"), entitled SYSTEM AND METHOD FOR RECOGNIZING MULTIPLE OBJECT STRUCTURE. MyScript is the owner, by assignment, of all rights, title and interest to the '603 patent. A true and correct copy of the '603 patent is attached as **Exhibit M** hereto.

41.     The '603 patent describes a system for recognizing an arrangement of multiple objects on computing devices by determining geometric relationships between objects and recognizing handwriting input and related boundaries of that input.

42.     Goodnotes is not licensed to practice the '603 patent in either an express or implied manner, nor does it enjoy or benefit from any rights in or to the '603 patent whatsoever.

**U.S. Patent No. 9,489,572**

43.     On November 8, 2016, after a full and fair examination, the USPTO duly and legally of U.S. Patent No. 9,489,572 (the "'572 patent"), entitled SYSTEM AND METHOD FOR RECOGNIZING GEOMETRIC SHAPES. MyScript is the owner, by assignment, of all rights, title and interest to the '572 patent. A true and correct copy of the '572 patent is attached as **Exhibit N** hereto.

44.     The '572 patent describes a system that can recognize a user's natural drawing of geometric shapes by processing both single-stroke and multi-stroke shapes, applying implicit and user-defined constraints at the vector component level.

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. 9,965,175**

45.     MyScript incorporates by reference each preceding paragraph as if fully set forth herein.

14

46.     Goodnotes and/or users of the Accused Products have directly infringed (either literally or under the doctrine of equivalents) and continue to directly infringe one or more of the claims of the '175 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the Accused Products within the United States and/or importing the Accused Products into the United States without authority or license. A non-limiting example of this infringement is set forth in **Exhibit O**.

47.     Additionally, and/or alternatively, Goodnotes has indirectly infringed and continues to indirectly infringe one or more of the claims of the '175 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Accused Products to directly infringe the one or more claims of the '175 patent. For example, (a) Goodnotes has had actual knowledge of the '175 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) Goodnotes intentionally causes, urges, or encourages users of the Accused Products to directly infringe one or more claims of the '175 patent by promoting, advertising, and instructing customers and potential customers about the Accused Products and uses of the application, including infringing uses; (c) Goodnotes knows (or should know) that its actions will induce users of the Accused Products directly infringe one or more claims the '175 patent; and (d) users of the Accused Products directly infringe one or more claims of the '175 patent. For instance, at a minimum, Goodnotes has supplied and continues to supply the Accused Products to customers while knowing that use of the app will infringe one or more claims of the '175 patent, and that Goodnotes' customers then directly infringe one or more claims of the '175 patent by installing and using the Accused Products in accordance with Goodnotes' product literature. A non-limiting example of this infringement is set forth in **Exhibit O**.

48.     Goodnotes' infringement of the '175 patent is also willful as outlined above because Goodnotes (a) had actual knowledge of the '175 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) engaged in the aforementioned activity despite an objectively high likelihood that Goodnotes' actions constituted infringement of the '175 patent; and (c) this objectively-defined risk was either known or so obvious that it should have been known to Goodnotes.

49.     MyScript is entitled to recover from Goodnotes all damages that MyScript has sustained as a result of Goodnotes' infringement of the '175 patent, including, without limitation, a reasonable royalty and lost profits.

50.     Goodnotes' infringement of the '175 patent was and continues to be willful and deliberate, entitling MyScript to enhanced damages.

51.     Goodnotes' infringement of the '175 patent is exceptional and entitles MyScript to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

52.     Goodnotes' infringement of the '175 patent has caused irreparable harm (including the loss of market share) to MyScript and will continue to do so unless enjoined by this Court.

<u>**COUNT II**</u>
<u>**INFRINGEMENT OF U.S. PATENT NO. 10,082,951**</u>

53.     MyScript incorporates by reference each preceding paragraph as if fully set forth herein.

54.     Goodnotes and/or users of the Accused Products have directly infringed (either literally or under the doctrine of equivalents) and continue to directly infringe one or more of the claims of the '951 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the Accused Products within the United States and/or importing the Accused

Products into the United States without authority or license. A non-limiting example of this infringement is set forth in **Exhibit P**.

55.     Additionally, and/or alternatively, Goodnotes has indirectly infringed and continues to indirectly infringe one or more of the claims of the '951 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Accused Products to directly infringe the one or more claims of the '951 patent. For example, (a) Goodnotes has had actual knowledge of the '951 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) Goodnotes intentionally causes, urges, or encourages users of the Accused Products to directly infringe one or more claims of the '951 patent by promoting, advertising, and instructing customers and potential customers about the Accused Products and uses of the application, including infringing uses; (c) Goodnotes knows (or should know) that its actions will induce users of the Accused Products directly infringe one or more claims the '951 patent; and (d) users of the Accused Products directly infringe one or more claims of the '951 patent. For instance, at a minimum, Goodnotes has supplied and continues to supply the Accused Products to customers while knowing that use of the app will infringe one or more claims of the '951 patent, and that Goodnotes' customers then directly infringe one or more claims of the '951 patent by installing and using the Accused Products in accordance with Goodnotes' product literature. A non-limiting example of this infringement is set forth in **Exhibit P**.

56.     Goodnotes' infringement of the '951 patent is also willful as outlined above because Goodnotes (a) had actual knowledge of the '951 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) engaged in the aforementioned activity despite an objectively high likelihood that

Goodnotes' actions constituted infringement of the '951 patent; and (c) this objectively-defined risk was either known or so obvious that it should have been known to Goodnotes.

57.    MyScript is entitled to recover from Goodnotes all damages that MyScript has sustained as a result of Goodnotes' infringement of the '951 patent, including, without limitation, a reasonable royalty and lost profits.

58.    Goodnotes' infringement of the '951 patent was and continues to be willful and deliberate, entitling MyScript to enhanced damages.

59.    Goodnotes' infringement of the '951 patent is exceptional and entitles MyScript to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

60.    Goodnotes' infringement of the '951 patent has caused irreparable harm (including the loss of market share) to MyScript and will continue to do so unless enjoined by this Court.

<u>**COUNT III**</u>
<u>**INFRINGEMENT OF U.S. PATENT NO. 11,402,991**</u>

61.    MyScript incorporates by reference each preceding paragraph as if fully set forth herein.

62.    Goodnotes and/or users of the Accused Products have directly infringed (either literally or under the doctrine of equivalents) and continue to directly infringe one or more of the claims of the '991 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the Accused Products within the United States and/or importing the Accused Products into the United States without authority or license. A non-limiting example of this infringement is set forth in **Exhibit Q**.

63.    Additionally, and/or alternatively, Goodnotes has indirectly infringed and continues to indirectly infringe one or more of the claims of the '991 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Accused Products to directly infringe the one or

more claims of the '991 patent. For example, (a) Goodnotes has had actual knowledge of the '991 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) Goodnotes intentionally causes, urges, or encourages users of the Accused Products to directly infringe one or more claims of the '991 patent by promoting, advertising, and instructing customers and potential customers about the Accused Products and uses of the application, including infringing uses; (c) Goodnotes knows (or should know) that its actions will induce users of the Accused Products directly infringe one or more claims the '991 patent; and (d) users of the Accused Products directly infringe one or more claims of the '991 patent. For instance, at a minimum, Goodnotes has supplied and continues to supply the Accused Products to customers while knowing that use of the app will infringe one or more claims of the '991 patent, and that Goodnotes' customers then directly infringe one or more claims of the '991 patent by installing and using the Accused Products in accordance with Goodnotes' product literature. A non-limiting example of this infringement is set forth in **Exhibit Q**.

64.    Goodnotes' infringement of the '991 patent is also willful as outlined above because Goodnotes (a) had actual knowledge of the '991 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) engaged in the aforementioned activity despite an objectively high likelihood that Goodnotes' actions constituted infringement of the '991 patent; and (c) this objectively-defined risk was either known or so obvious that it should have been known to Goodnotes.

65.    MyScript is entitled to recover from Goodnotes all damages that MyScript has sustained as a result of Goodnotes' infringement of the '991 patent, including, without limitation, a reasonable royalty and lost profits.

66.    Goodnotes' infringement of the '991 patent was and continues to be willful and deliberate, entitling MyScript to enhanced damages.

67.    Goodnotes' infringement of the '991 patent is exceptional and entitles MyScript to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

68.    Goodnotes' infringement of the '991 patent has caused irreparable harm (including the loss of market share) to MyScript and will continue to do so unless enjoined by this Court.

**COUNT IV**
**INFRINGEMENT OF U.S. PATENT NO. 10,410,316**

69.    MyScript incorporates by reference each preceding paragraph as if fully set forth herein.

70.    Goodnotes and/or users of the Accused Products have directly infringed (either literally or under the doctrine of equivalents) and continue to directly infringe one or more of the claims of the '316 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the Accused Products within the United States and/or importing the Accused Products into the United States without authority or license. A non-limiting example of this infringement is set forth in **Exhibit R**.

71.    Additionally, and/or alternatively, Goodnotes has indirectly infringed and continues to indirectly infringe one or more of the claims of the '316 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Accused Products to directly infringe the one or more claims of the '316 patent. For example, (a) GoodNotes has had actual knowledge of the '316 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) Goodnotes intentionally causes, urges, or encourages users of the Accused Products to directly infringe one or more claims of the '316 patent by promoting, advertising, and instructing customers and potential customers about the Accused

Products and uses of the application, including infringing uses; (c) Goodnotes knows (or should know) that its actions will induce users of the Accused Products directly infringe one or more claims the '316 patent; and (d) users of the Accused Products directly infringe one or more claims of the '316 patent. For instance, at a minimum, Goodnotes has supplied and continues to supply the Accused Products to customers while knowing that use of the app will infringe one or more claims of the '316 patent, and that Goodnotes' customers then directly infringe one or more claims of the '316 patent by installing and using the Accused Products in accordance with Goodnotes' product literature. A non-limiting example of this infringement is set forth in **Exhibit R**.

72.    Goodnotes' infringement of the '316 patent is also willful as outlined above because Goodnotes (a) had actual knowledge of the '316 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) engaged in the aforementioned activity despite an objectively high likelihood that Goodnotes' actions constituted infringement of the '316 patent; and (c) this objectively-defined risk was either known or so obvious that it should have been known to Goodnotes.

73.    MyScript is entitled to recover from Goodnotes all damages that MyScript has sustained as a result of Goodnotes' infringement of the '316 patent, including, without limitation, a reasonable royalty and lost profits.

74.    Goodnotes' infringement of the '316 patent was and continues to be willful and deliberate, entitling MyScript to enhanced damages.

75.    Goodnotes' infringement of the '316 patent is exceptional and entitles MyScript to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

76.    Goodnotes' infringement of the '316 patent has caused irreparable harm (including the loss of market share) to MyScript and will continue to do so unless enjoined by this Court.

## COUNT V
## INFRINGEMENT OF U.S. PATENT NO. 10,181,076

77.    MyScript incorporates by reference each preceding paragraph as if fully set forth herein.

78.    Goodnotes and/or users of the Accused Products have directly infringed (either literally or under the doctrine of equivalents) and continue to directly infringe one or more of the claims of the '076 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the Accused Products within the United States and/or importing the Accused Products into the United States without authority or license. A non-limiting example of this infringement is set forth in **Exhibit S**.

79.    Additionally, and/or alternatively, Goodnotes has indirectly infringed and continues to indirectly infringe one or more of the claims of the '076 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Accused Products to directly infringe the one or more claims of the '076 patent. For example, (a) Goodnotes has had actual knowledge of the '076 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) Goodnotes intentionally causes, urges, or encourages users of the Accused Products to directly infringe one or more claims of the '076 patent by promoting, advertising, and instructing customers and potential customers about the Accused Products and uses of the application, including infringing uses; (c) Goodnotes knows (or should know) that its actions will induce users of the Accused Products directly infringe one or more claims the '076 patent; and (d) users of the Accused Products directly infringe one or more claims of the '076 patent. For instance, at a minimum, Goodnotes has supplied and continues to supply the Accused Products to customers while knowing that use of the app will infringe one or more claims of the '076 patent, and that Goodnotes' customers then directly infringe one or more claims

of the '076 patent by installing and using the Accused Products in accordance with Goodnotes' product literature. A non-limiting example of this infringement is set forth in **Exhibit S**.

80.     Goodnotes' infringement of the '076 patent is also willful as outlined above because Goodnotes (a) had actual knowledge of the '076 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) engaged in the aforementioned activity despite an objectively high likelihood that Goodnotes' actions constituted infringement of the '076 patent; and (c) this objectively-defined risk was either known or so obvious that it should have been known to Goodnotes.

81.     MyScript is entitled to recover from Goodnotes all damages that MyScript has sustained as a result of Goodnotes' infringement of the '076 patent, including, without limitation, a reasonable royalty and lost profits.

82.     Goodnotes' infringement of the '076 patent was and continues to be willful and deliberate, entitling MyScript to enhanced damages.

83.     Goodnotes' infringement of the '076 patent is exceptional and entitles MyScript to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

84.     Goodnotes' infringement of the '076 patent has caused irreparable harm (including the loss of market share) to MyScript and will continue to do so unless enjoined by this Court.

<u>COUNT VI</u>
<u>INFRINGEMENT OF U.S. PATENT NO. 10,013,603</u>

85.     MyScript incorporates by reference each preceding paragraph as if fully set forth herein.

86.     Goodnotes and/or users of the Accused Products have directly infringed (either literally or under the doctrine of equivalents) and continue to directly infringe one or more of the claims of the '603 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale,

and/or selling the Accused Products within the United States and/or importing the Accused Products into the United States without authority or license. A non-limiting example of this infringement is set forth in **Exhibit T**.

87.    Additionally, and/or alternatively, Goodnotes has indirectly infringed and continues to indirectly infringe one or more of the claims of the '603 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Accused Products to directly infringe the one or more claims of the '603 patent. For example, (a) Goodnotes has had actual knowledge of the '603 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) Goodnotes intentionally causes, urges, or encourages users of the Accused Products to directly infringe one or more claims of the '603 patent by promoting, advertising, and instructing customers and potential customers about the Accused Products and uses of the application, including infringing uses; (c) Goodnotes knows (or should know) that its actions will induce users of the Accused Products directly infringe one or more claims the '603 patent; and (d) users of the Accused Products directly infringe one or more claims of the '603 patent. For instance, at a minimum, Goodnotes has supplied and continues to supply the Accused Products to customers while knowing that use of the app will infringe one or more claims of the '603 patent, and that Goodnotes' customers then directly infringe one or more claims of the '603 patent by installing and using the Accused Products in accordance with Goodnotes' product literature. A non-limiting example of this infringement is set forth in **Exhibit T**.

88.    Goodnotes' infringement of the '603 patent is also willful as outlined above because Goodnotes (a) had actual knowledge of the '603 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) engaged in the aforementioned activity despite an objectively high likelihood that

Goodnotes' actions constituted infringement of the '603 patent; and (c) this objectively-defined risk was either known or so obvious that it should have been known to Goodnotes.

89.    MyScript is entitled to recover from Goodnotes all damages that MyScript has sustained as a result of Goodnotes' infringement of the '603 patent, including, without limitation, a reasonable royalty and lost profits.

90.    Goodnotes' infringement of the '603 patent was and continues to be willful and deliberate, entitling MyScript to enhanced damages.

91.    Goodnotes' infringement of the '603 patent is exceptional and entitles MyScript to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

92.    Goodnotes' infringement of the '603 patent has caused irreparable harm (including the loss of market share) to MyScript and will continue to do so unless enjoined by this Court.

## COUNT VII
## INFRINGEMENT OF U.S. PATENT NO. 9,489,572

93.    MyScript incorporates by reference each preceding paragraph as if fully set forth herein.

94.    Goodnotes and/or users of the Accused Products have directly infringed (either literally or under the doctrine of equivalents) and continue to directly infringe one or more of the claims of the '572 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the Accused Products within the United States and/or importing the Accused Products into the United States without authority or license. A non-limiting example of this infringement is set forth in **Exhibit U**.

95.    Additionally, and/or alternatively, Goodnotes has indirectly infringed and continues to indirectly infringe one or more of the claims of the '572 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Accused Products to directly infringe the one or

more claims of the '572 patent. For example, (a) Goodnotes has had actual knowledge of the '572 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) Goodnotes intentionally causes, urges, or encourages users of the Accused Products to directly infringe one or more claims of the '572 patent by promoting, advertising, and instructing customers and potential customers about the Accused Products and uses of the application, including infringing uses; (c) Goodnotes knows (or should know) that its actions will induce users of the Accused Products directly infringe one or more claims the '572 patent; and (d) users of the Accused Products directly infringe one or more claims of the '572 patent. For instance, at a minimum, Goodnotes has supplied and continues to supply the Accused Products to customers while knowing that use of the app will infringe one or more claims of the '572 patent, and that Goodnotes' customers then directly infringe one or more claims of the '572 patent by installing and using the Accused Products in accordance with Goodnotes' product literature. A non-limiting example of this infringement is set forth in **Exhibit U**.

96.    Goodnotes' infringement of the '572 patent is also willful as outlined above because Goodnotes (a) had actual knowledge of the '572 patent or was willfully blind to its existence prior to (at least as early as December 10, 2024), and no later than, the filing of this action; (b) engaged in the aforementioned activity despite an objectively high likelihood that Goodnotes' actions constituted infringement of the '572 patent; and (c) this objectively-defined risk was either known or so obvious that it should have been known to Goodnotes.

97.    MyScript is entitled to recover from Goodnotes all damages that MyScript has sustained as a result of Goodnotes' infringement of the '572 patent, including, without limitation, a reasonable royalty and lost profits.

98.     Goodnotes' infringement of the '572 patent was and continues to be willful and deliberate, entitling MyScript to enhanced damages.

99.     Goodnotes' infringement of the '572 patent is exceptional and entitles MyScript to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

100.    Goodnotes' infringement of the '572 patent has caused irreparable harm (including the loss of market share) to MyScript and will continue to do so unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, MyScript respectfully requests the following relief from this Court:

A.      That Judgment be entered that Defendant has infringed and continues to infringe at least one or more claims of each of the Asserted Patents, directly and/or indirectly, literally and/or under the doctrine of equivalents, and that such infringement has been and is willful;

B.      An injunction enjoining Defendant, its officers, agents, servants, employees and attorneys, and other persons in active concert or participation with Defendant, and its parents, subsidiaries, divisions, successors and assigns, from further infringement of the Asserted Patents;

C.      An award of damages sufficient to compensate MyScript for Defendant's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendant's willful infringement;

D.      That the case be found exceptional under 35 U.S.C. § 285 and that MyScript be awarded its reasonable attorneys' fees;

E.      Costs and expenses in this action;

F.      An award of prejudgment and post-judgment interest; and

G.      Such other and further relief as the Court may deem just and proper.

## <u>REQUEST FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MyScript requests a trial by jury of any issues so triable by right.

Dated: May 15, 2025                               Respectfully Submitted,

                                                 */s/ Deron R. Dacus*
                                                 Deron R. Dacus
                                                 State Bar No. 00790553
                                                 THE DACUS FIRM, P.C.
                                                 821 ESE Loop 323, Suite 430
                                                 Tyler, TX 75701
                                                 (903) 705-7233
                                                 ddacus@dacusfirm.com
                                                 *Counsel for Plaintiff*
                                                 *MyScript SAS*

OF COUNSEL*:*

Amol A. Parikh
Ashley K. Justice
MCDERMOTT WILL & EMERY LLP
444 W Lake Street
Chicago, Illinois 60606
(312) 984-6477
amparikh@mwe.com
akjustice@mwe.com